# Wheeling.

## CHARLES A. STUART *et al. vs.* JESSE J. LIVESAY.

January Term, 1870.

1. Under the plea of *non est factum* it is competent to prove that at the time of the delivery of the bond to the obligee by the principal debtor, it was stated by him that the two other obligors, who were in fact sureties, had signed it with the understanding and agreement that certain other parties were also to sign it. And this being established, and that the obligee took the bond with this understanding, the delivery, which is essential to the existence of the bond, was not such a one as the bond of the parties to be bound thereby, and therefore there was no such bond.

2. It is proved that a negotiable note is drawn for 1,150 dollars, payable in sixty days; that at maturity it was renewed for 1,161 dollars and 50 cents, payable in sixty days; at maturity the latter note was renewed for thirty days for 1,168 dollars and 12 cents, and at maturity the latter was renewed for sixty days, for 1,175 dollars. The defendant asked that the jury be instructed that, if they believe from the evidence that the plaintiff embraced in the several notes, or any of them, the anticipated interest to be due at the maturity of the notes respectively, that it would constitute usury and render the transaction void. The court gave the instructions so far as the original loan was concerned, but modified the instruction as follows: that as it appeared from a calculation made in court, which was admitted to be correct, that the excess beyond legal interest upon the amount of the first note, from its maturity to the maturity of the note of 1,175 dollars, was 10 dollars and 95 cents, including all the notes, if the jury believed from the evidence that this excess in interest was a mistake or inadvertance in calculation in the renewal of the notes, and that the plaintiff had no intention to charge any more than legal interest, then such excess was not usury. HELD:

> That there was no error in the refusal of the court to give the instruction asked by the defendant, nor in giving the instruction as modified by the court.

The summons in this case was returnable to March rules, 1867, in the clerk's office of the circuit court of Greenbrier county. The action was debt, and claimed 1,563 dollars. The defendants William R. Stuart and John Stuart who were sureties for the principal debtor in the bond, Charles A. Stuart, pleaded, in addition to payment and usury, *non est factum.* The cause was tried in January, 1869, when there was a verdict and judgment for the plaintiff, Jesse Livesay.

The matters arising on the plea of *non est factum* are sufficiently stated in the opinion of the President.

The second bill of exceptions was taken to the ruling of the court in the matter of instructions, and appears in the record as follows:

"Be it remembered, that upon the trial of this cause the defendants, in support of their plea of usury, offered evidence tending to show that the plaintiff loaned the defendant, Charles A. Stuart, one thousand dollars, and took his negotiable note for 1,150 dollars, payable in sixty days; that this note at maturity was renewed for 1,161 dollars and 50 cents, payable in sixty days, with the names of the other defendants and other names as endorsers; that this note at maturity was renewed for thirty days for 1,168 dollars and 12 cents, with endorsers, and that at the maturity of this note it was renewed for sixty days for 1,175 dollars, with endorsers, and was protested and constitutes the foundation of the bond in controversy; thereupon the defendants moved the Court to instruct the jury that if they believed from the evidence that the plaintiff took the defendant C. A. Stuart's note for 1,150 dollars for a loan of 1,000 dollars for sixty days, it rendered the transaction usurious and void, and the taint of usury would extend to the bond in question; or if they believe from the evidence that the original transaction was fair and free from the taint of usury, yet, if the plaintiff embraced in the several notes, or any of them, the anticipated interest to be due at the maturity of said

notes respectively, this would constitute usury and render the transaction void. The court gave these instructions so far as the original loan was concerned, and the other instruction with this modification: that as it appeared from a calculation made in Court (which was admitted to be correct) that the excess beyond legal interest upon the amount of the first note from its maturity to the maturity of the note of 1,175 dollars, was 10 dollars and 95 cents, including all the notes, if the jury believe from the evidence that this excess of 10 dollars and 95 cents in the interest was a mere mistake, or inadvertence of calculation in the renewal of said notes, and that the plaintiff had no intention thereby to charge any more than legal interest, then such excess was not usury, but was simply money paid under a mistake which could be recovered back by the defendants. The defendants thereupon excepted to the opinion of the court for not giving said instructions without the modification aforesaid, and for giving them with the said modification. And after the jury had rendered their verdict the defendants moved for a new trial."

The defendants brought the case to this court on a writ of error and supersedeas.

Hon. N. Harrison, judge of the circuit court of Greenbrier, presided on the trial of the cause.

*Dennis* and *Sperry* for the plaintiffs in error.

*Stanton & Allison* for the defendant in error.

The first error complained of by the appellants is the rejection of evidence under the general plea of *non est factum*, filed by two of the defendants, to wit: Wm. R. and John Stuart, "That the bond was signed by them respectively as sureties of the third defendant, Charles A. Stuart, with a distinct understanding at the time, that the bond was not to be binding on them until it was also signed by two other

persons, Shields and Feamster; and that when the said Charles A. Stuart stamped and delivered the bond to the plaintiff, he informed the plaintiff of the understanding aforesaid between himself and Wm. R. and John Stuart, and the plaintiff said in reply, that he would himself procure the signatures of said Shields and Feamster to the bond."

The appellants claim that under the general plea of *non est factum*, evidence may be given that the instrument was never delivered, or that it was delivered as an "escrow," although signed and sealed and stamped, and authorities are quoted to that effect as claimed.

We can admit, for the argument, that both these propositions are correct, for the rejected evidence did not come under either of the propositions.

The understanding between the three Stuarts, (joint obligors), at the time two of them executed, or *signed* and *sealed* the instrument, does not affect, or is no part of the "delivery." As long as the instrument remains in the hands of either of the obligors, and particularly the principal, there is no *delivery*. That takes place when the instrument is given to the obligee. Am. Law Reg., vol. 5, p. 551, 552. July, 1866. There was no controversy but that the instrument, as signed and sealed by the three, was delivered to the obligee, the plaintiff, by the principal obligor. And we claim that no condition or qualification to this delivery was even attempted. There is no pretence of an agreement or understanding had between the plaintiff and Wm. R. and John Stuart, that the instrument was not to be binding on them unless signed by Shields and Feamster, either at the time of the delivery, or before. There was no agreement between Charles A. Stuart and the plaintiff, that the delivery was qualified or conditional. The proof offered was simply that the "understanding" between the principal and his sureties was made known to the plaintiff at the time of delivery, who simply replied that he would himself procure the signatures of Shields and Feamster. But Charles A. Stuart

made no expression that his delivery of the instrument was upon such condition. The proof may have shown a breach of faith upon the part of Charles A. Stuart, towards his sureties, and also, as may be claimed, upon the part of the plaintiff,—but certainly that could not be evidence under the *general* plea of *non est factum*, and doubtful under a *special* plea of *non est factum*. 1 Saunders' Pl. and Ev., 679. The delivery was absolute. See Co. Lit., 36; Shep. Touch., 58-9; *Williams* v. *Green*, Cro. Eliz., 884; *Moss* v. *Riddle*, 5 Cranch, 357; 2 Rob. Pr., (new), 18 to 20; 1 Tuck. Com., book 2, p. 244; *State* v. *Chrisman*, 2 Ind., 126; *Herdman* v. *Bratton*, 2 Harrington, 396; *Foley* v. *Crowquill*, 5 Blackf., 18; *Ward* v. *Lewis*, 4 Pick., 518; *Wright* v. *Shelby, &c.*, 16 B. Monroe, 5; *Dearhoff* v. *Foresman*, (Ind.,) Am. Law Reg., vol. 5, 539; July 1866.

The second error assigned is an improper charge of the court to the jury, under the plea of usury. Upon examining the record, it will be seen that the previous notes were negotiable commercial paper, and there was no usury.

We think there was no error in this. The court instructed the jury in the language asked by the appellants; but as is very common and proper in such cases, lest the charge might be misconstrued, and improperly applied by the jury, made, as we think, a proper addition—one which could not have caused an improper verdict against the appellants. *Thornton* v. *Bank of Washington*, 3 Peters, 36; 5 Leigh, 251; 2 Gratt., 372; 8 Leigh, 238; *Agricultural Bank* v. *Bissell*, 12 Pick., 588; *Ewing* v. *Howard*, 7 Wallace, 505-6.

The Code of 1860, ch. 141, sec. 6, p. 624, authorizes the defendant to plead in general terms, that the contract was for the payment of interest at a greater rate than is allowed by law, and the defendant may reply generally, and give in evidence any matter which could be given in evidence under special replication. The pleadings, no doubt, were designed to be under this statute. The statute was not designed to change the substance of this issue at common law. That is, this special plea must charge (and is based upon it) that

the agreement was corrupt and unlawful. Chitty's Plead., vol. 2, p. 515—margin.

Replication must be, it was "not in pursuance of, or upon the said corrupt and unlawful agreement, or for the purpose in said plea mentioned," &c. 2 Chit. Pl., 665.

If the amount was too great, "by mistake," it was not usurious, as it was not a contract for usurious interest, and the error is not part of the contract.

The third error assigned is, the overruling of the motion of defendants below for a new trial, for three reasons. (The first two are in the other errors assigned here). The 3d, because they offered to permit a verdict against them if the court would grant a new trial, by reason of surprise. Hilliard on New Trials, 398, 401.

We think no decision can be found to sustain the appellants in this proposition. Such motions, if proper, are addressed to the discretion of the court, and it is such a discretion that an appellate court will not reverse. But the motion was premature,—the court could not act upon a motion for a new trial, until after verdict. It was improper to bargain with the court in advance. Hil. on New Trials, 398 to 401; *Law* v. *Law*, 2 Gratt., 366.

BROWN, President.

This was an action of debt on a bond, purporting to be the bond of three obligors: plea, *non est factum.* Two of the parties who signed the alleged bond, together with two others, had been, and then were the securities of the principal obligor, in a pre-existing debt, in lieu of which the bond in question was to be given, that the two securities, Wm. R. Stuart and John Stuart, respectively signed the said bond, with a distinct understanding that it was not to be binding on them until it was signed by William H. Shields and Thomas L. Feamster, the other two securities in the original note; that Charles A. Stuart, the principal obligor, stamped and delivered the bond to the obligee, but informed him, at the time, of the understanding aforesaid between

himself and William R. and John Stuart, and the obligee then took the bond and said he would procure the signatures of said Shields and Feamster to it. This evidence was excluded from the jury as inadmissable under the plea of *non est factum*.

That plea put in issue every fact essential to the existence of the bond. Delivering was an essential fact to such existence. It will be observed that the securities, William R. and John Stuart, did not themselves deliver the bond in question to the obligee; but they respectively signed and delivered it to Charles A. Stuart, the principal obligor, with the understanding that he was not to deliver it as their bond until it should be signed by the two other parties named.

In delivering the bond to the obligee, the principal obligor, Charles A. Stuart, acted as the agent of William R. and John Stuart; and his agency was either general or special. If special, it must be strictly pursued. If general, the agent's act might bind the principals, as to third persons; though not strictly following his instructions, if within the scope of the general power. Had the agent then, in this case delivered the bond absolutely, notwithstanding his particular instructions and special authority, but without notice thereof to the obligee, it might become a question upon which there seems to be much contrariety of decision; but, inasmuch as the obligee was at the time of taking the bond fully advised by the agent of. the facts, and took on the terms specified, of procuring the signature required to make it obligatory, nothing can be clearer than that there was not in such case any such delivery of the bond, as the bond of the parties to be bound thereby; and being no such delivery, there was no such bond. The evidence was admissible under the general plea of *non est factum*, and the court erred in excluding it.

There was no error in refusing to give the instruction relative to the question of usury, as asked by the defendants, nor as given by the court.

For the error above stated the judgment should be reversed, with costs to the plaintiffs in error, the verdict set aside, and a new trial awarded and the cause remanded for further proceedings, in conformity with the views above indicated.

The other judges concurred.

JUDGMENT REVERSED.